

**SIGNED this 11th day of February, 2011.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11451-CAG |
| | § | |
| JAMES H. BASS, | § | CHAPTER 7 |
|     Debtor. | § | |

| | | |
|---|---|---|
| C. DANIEL ROBERTS, CHAPTER 7 | § | |
| TRUSTEE | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| J. HOWARD BASS & ASSOCIATES, INC.; | § | ADV. NO. 10-01101- CAG |
| ESPERADA HOLDINGS, INC.; | § | |
| J. HOWARD BASS, INDIVIDUALLY; | § | |
| PEGGY SUE BASS, INDIVIDUALLY; | § | |
| JAMES H. BASS, INDIVIDUALLY; | § | |
| KEN PARENT, JR., AMY FOSTER- | § | |
| LOCKE; CLAYTON STIBA; AND | § | |
| FOSTER REALTY, LTD. | § | |
|     Defendants. | § | |
| | § | |

## MEMORANDUM OPINION

James H. Bass ("Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on June 3, 2009.  On August 6, 2010, C. Daniel Roberts, the Chapter 7 Trustee, ("Plaintiff") filed this adversary case against J. Howard Bass & Associates ("JHBA"), Esperada Holdings, Inc. ("Esperada"), Peggy Sue Bass, James H. Bass, Bodden & Bodden, and Bodden Corporate Services, Ltd. (docket no. 1).  On September 28, 2010, Mr. Roberts filed an Amended Complaint, adding Ken Parent, Jr., Amy Foster-Locke, Clayton Stiba, and Foster Realty, Ltd. and removing Bodden & Bodden and Bodden Corporate Services, Ltd. from the list of defendants ("Defendants") (docket no. 49).

On October 15, 2010, Defendants J. Howard Bass, Peggy Sue Bass, JHBA, and Esperada filed Motions to Dismiss Case for Lack of Jurisdiction (docket nos. 66, 68, 70, 72, 73).  Also on October 15, 2010, Defendants J. Howard Bass, Peggy Sue Bass, JHBA, and Esperada filed Motions to Dismiss for Failure to State a Claim (docket nos. 67, 69, 71, 74).  On November 8, 2010, Plaintiff filed its Responses to the Motions to Dismiss for Failure to State a Claim (docket no. 79) and the Motions to Dismiss Case for Lack of Jurisdiction (docket nos. 80-81).  A hearing was held on December 10, 2010 to consider Defendants' Motions to Dismiss Case and Motions for More Definite Statement.  After the trial, several matters were taken under advisement.  The main issues to be considered after the hearing are the constitutionality of the grant of power given to the Bankruptcy Courts by the United States Congress, and whether Plaintiff's First Amended Complaint survives Defendants' Motions to Dismiss for failure to state a claim, specifically whether Plaintiff's claims that JHBA and Esperada are alter-egos of Debtor James H. Bass should be allowed to go forward, whether this Court has personal jurisdiction over

Esperada as a Caymanian corporation, and whether the Defendants may be substantively consolidated.

The Court has reviewed the Motions filed by both Plaintiff and Defendants and has considered the arguments and evidence of counsel. Based on the foregoing, the Court finds that Defendants' various Motions to Dismiss are DENIED for the reasons stated below.

The Court, as we will discuss below, DOES have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) on which this Court can enter a final judgment. This matter is referred to the Court under the Districts' Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following represents the Court's findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

### BACKGROUND OF DEBTOR

Debtor, an individual, filed a Chapter 7 bankruptcy on January 18, 2001, and received a standard discharge on June 17, 2001. During that case, Daesung Energy Resources, Inc. ("Daesung") filed a complaint to determine the non-dischargeability of a debt owed by Debtor to Daesung. Daesung pled that it was the holder of a final judgment against the Debtor for damages in the amount of $1,750,000, attorneys' fees in the amount of $401,783, and exemplary damages in the amount of $1,389,576.58. On December 21, 2001, this Court entered its Judgment Holdings Debt Owing to Plaintiff Non-Dischargeable, declaring the entire judgment owed to Daesung as non-dischargeable. *See* (Case No. 01-01116).

On or about March 11, 2005, BlueRidge Gas Partners, LLC ("BlueRidge") obtained a judgment against Debtor in the 129th Judicial District Court of Harris County, Texas for actual damages in the amount of $2,187,036, plus pre-judgment interest in the amount of $51,530.16,

post-judgment interest at the rate of 5% per annum, and attorneys' fees in the amount of $11,506.75.

On June 3, 2009, Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code (docket no. 1, Case No. 09-11451).  On the petition, Debtor lists his address as 4202 Oro Court, Georgetown, Texas.  Debtor listed BlueRidge as an unsecured creditor on Debtor's Schedule F, with a claim of $2,187,036.  Debtor listed Daesung as an unsecured creditor with a claim of $3,900,000.  Additionally, Debtor listed JHBA as an unsecured creditor with a claim of $2,855,743 as a result of two loans.  Debtor stated that he is self-employed as a consultant on his Schedule I and listed his average monthly income to be $0.00.  Debtor stated that his wife is employed by JHBA and receives an average monthly income of $2,613.89.

On April 21, 2010, the Court entered an order denying Debtor's discharge pursuant to § 727, based on Debtor's misrepresentations on his schedules and his 2004 examinations as to Debtor's ownership interest in millions of dollars of assets.  Debtor is currently in Texas state prison on the charge of driving while intoxicated, a second degree felony.

## BACKGROUND OF DEFENDANTS

A.      J. Howard Bass & Associates

JHBA is a Texas corporation.  The Articles of Incorporation were filed on December 6, 2004.  The articles of incorporation indicate James H. Bass as the initial registered agent, the only named director of the company, and the incorporator.  The business address is the same address Debtor listed on Debtor's bankruptcy petition.   The money to start JHBA came from the sale of guns by the J. Howard Bass Trust, of which Debtor was not a settler, trustee, or beneficiary.  The Articles of Incorporation state that there would be 1,000 shares of stock issued with no par value, but that the corporation would not commence business until it received $1,000

for the issuance of its shares.  According to the Articles of Incorporation, the purpose for which

JHBA was established is, *inter alia*, to

> engage in the business of prospecting for, developing, mining, producing, acquiring, refining, processing, manufacturing and marketing natural resources and their products and transporting said natural resources and their products (except that it may not engage directly in the oil pipe line business in this state); to engage in the production, purchase, manufacture, processing, transportation and sale of equipment, commodities, materials, goods, wares and merchandise; and to erect, own, operate and dispose of such buildings, structures, plants, works and facilities.

The first meeting of the board of directors of JHBA was held on December 15, 2004 at

the Debtor's home/JHBA's business address.  At the meeting, Debtor's son, J. Howard Bass, was

elected president of the company and Debtor was nominated and elected temporary chairman.

At the time of this meeting, J. Howard Bass was 15 years old.

Debtor remained chairman of the board until November 20, 2006, when he resigned.

Prior to Debtor's resignation, Debtor entered into a consulting agreement with JHBA on

February 15, 2005, which identified that Debtor would perform the following services:

> The consultant will consult with the officers and directors of the company concerning matters relating to employees of the company, concerning matters relating to the management and organization, their financial policies, the terms and conditions of employment, and generally any matters arising out of the business affairs of the company.

Debtor was to be paid $30/hour for these services.  Additionally, as late as January 31, 2008,

Debtor was holding himself out as the President of JHBA, as evidenced by the signature pages of

a wire transfer instructions pursuant to a purchase and sale agreement.

On April 8, 2009, the Board of Directors of JHBA agreed to use a portion of the assets of

JHBA in satisfaction of Debtor's debt to Daesung.

B.      Esperada Holdings, Inc.

Esperada is a corporation formed under the laws of the Cayman Islands on July 1, 2008. J. Howard Bass is listed as the only shareholder, holding 100 shares and paying $100 total for those shares.  The Memorandum of Association states that the company will have 50,000 shares of $1.00 par value.  The Articles of Incorporation list J. Howard Bass and Clayton Thomas Stiba, as the directors and/or beneficial owners of Esperada.  Both list JHBA as their employer.  The money to start Esperada allegedly came from JHBA.

According to an advertisement in the magazine Caribbean Cruising from Q3 2008, Debtor was holding himself out as the president of Esperada.  JHBA is currently a creditor of Esperada.  The minutes from JHBA's Board of Directors meetings show that decisions regarding Esperada were made as part of JHBA's meetings.  Additionally, JHBA's Profit and Loss statement for April 2008 to April 2009 shows that JHBA states they made over $7 million in "Caymans Investment."

C.      J. Howard Bass

J. Howard Bass is Debtor's 21-year-old son.  J. Howard Bass was 19 years old when Esperada was incorporated, and 15 years old when JHBA was incorporated.  He is listed as the chairman of both companies and is purported to be the sole owner of Esperada.

D.      Peggy Sue Bass

Peggy Sue Bass is Debtor's wife.  She is a shareholder in JHBA and is on the board of JHBA.

PARTIES' CONTENTIONS

After the hearing, several issues were taken under advisement: (A) the constitutionality of the current bankruptcy court system, 28 U.S.C. § 1334, and 28 U.S.C. § 157(a); (B) whether

Plaintiff's alter-ego theories survive the various motions to dismiss; (C) whether this Court can exercise personal jurisdiction over Esperada; and (D) whether substantive consolidation is appropriate in this case. The Court will discuss each issue in turn.

A.      Constitutionality of the Current Bankruptcy Court System

Defendants argue that this case must be dismissed for lack of subject matter jurisdiction because this Court is not an Article III court and because 28 U.S.C. §§ 157(a) and 1334 are unconstitutional (docket nos. 66, 68, 70, 72). Defendants cite to the seminal case regarding bankruptcy court jurisdiction. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). In Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction, Defendants state that "[i]n *Marathon*, the United States Supreme Court held that 'Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.'" This quote does not exist in the case. *Marathon* does however hold that the Bankruptcy Code "impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts." 458 U.S. at 87.

Additionally, Defendants argue that 28 U.S.C. § 157(a) is unconstitutional. Section 157(a) states that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Defendants argue that this statute is unconstitutional as applied to this matter because it violates Article III of the United States Constitution to the extent it authorizes the delegation of the judicial power of the United States to

a non-Article III court over the objection of the Defendants.  Defendants essentially argue that this statute is unconstitutional for the same reasons that the Supreme Court found the bankruptcy code, as it existed in 1982, to be unconstitutional.

If this is where history ended, Defendants would be correct in stating that the bankruptcy code is unconstitutional.  However, Defendants' argument ignores approximately 30 years of subsequent history.[1]  In 1984, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA").  One of the major changes, meant to remedy the constitutional challenges of *Marathon*, was 28 U.S.C. § 157(b)(1), which states

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

This statutory language gave the bankruptcy courts the same broad jurisdiction as the 1978 system, but it forbade the bankruptcy courts from rendering final judgments in cases that were only "related to" the bankruptcy case.  *See* Alissa Pittman et al., *Survey: The Controversy Surrounding the Jurisdiction of Bankruptcy Courts*, 5 J. BANKR. L. & PRAC. 387.  In the words of the Fifth Circuit:

> Essentially, Congress reenacted the 1978 Act, but divided its jurisdictional grant into "core" proceedings, over which the bankruptcy courts exercise full judicial power-and "otherwise related" or "non-core" proceedings-over which the bankruptcy courts exercise only limited power.

*In re Wood*, 825 F.2d 90, 91 (5th Cir. 1987).  The court in *Wood* then goes on to examine the constitutionality of 28 U.S.C. §§ 1334 and 157.  The *Wood* court first examined 28 U.S.C. § 1334 to determine whether bankruptcy jurisdiction exists.  *Id.*  Section 1334(a) gives the district courts original and exclusive jurisdiction of all cases *under* title 11.  28 U.S.C. § 1334(a)

---

[1] For a review of judicial and scholarly opinions critical of *Marathon* in the years following BAFJA, *see* Kennedy, Frank, *The Bankruptcy Court and Its Jurisdiction*, 1995 ANN. SURV. OF BANKR. LAW 16 (1995).

(emphasis added).   Section 1334(b) gives the district court original, but not exclusive, jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11.  28 U.S.C. 1334(b) (emphasis added).  The ***Wood*** court examined the legislative history of the 1978 Act (as subsection 1334(b) was taken verbatim from subsection 1471(b) of the 1978 Act), and determined that "the phrase 'arising under title 11, or arising in or related to cases under title 11' was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." ***In re Wood***, 825 F.2d at 92.  ***Marathon*** found the framework of section 1471 of the 1978 Act unconstitutional, not because of the expansive grant of bankruptcy jurisdiction in the district courts in subsection 1471(b), but because of subsection 1471(c), which vested the whole of bankruptcy jurisdiction in bankruptcy courts, which the Court found to encompass proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges.  ***Id.*** (citing ***Marathon***, 458 U.S. at 71).  The Supreme Court's concern was not with the scope of the jurisdiction, but with the placement of that jurisdiction.  ***Id.***  Congress responded to ***Marathon*** by altering the placement of bankruptcy jurisdiction by creating the core/non-core distinction, and restricting the power of bankruptcy courts from adjudicating non-core proceedings.  ***Id.***

The ***Wood*** court then set about articulating a test for determining whether a matter falls within bankruptcy jurisdiction under 28 U.S.C. § 1334.  The court adopted the ***Pacor*** test of the Third Circuit and said that a matter is at least "related to" the bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." ***Id.*** at 93 (citing ***Pacor, Inc. v. Higgins***, 743 F.2d 984, 994 (3rd Cir. 1984)).  In a case not cited by Defendants (presumably because they limited their search to cases addressing the 1978 Act),

the Supreme Court cites both *Pacor* and *Wood* favorably.  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).

These cases all examine 28 U.S.C. § 1334 as it exists today, not the statute granting jurisdiction under the 1978 Act.  Both the Fifth Circuit and the Supreme Court have analyzed section 1334 and have found no problem with the grant of jurisdiction in the statute, and these cases even specifically address *Marathon* and how the new statute fixes the problems the Supreme Court found with the 1978 Act.  As such, 28 U.S.C. § 1334 is constitutional.  Additionally, the Plaintiff's original complaint seeks, *inter alia*, turnover and accounting of estate property, substantive consolidation of the various defendants, and piercing the corporate veil (docket no. 1).  Analyzing this under the *Pacor* test—whether the outcome of the proceeding could conceivably have any effect on the bankruptcy estate—there is no question that if this Court ultimately determines that certain defendants are alter-egos of the Debtor, substantively consolidates JHBA and Esperada, and orders a turnover of property, this will have a dramatic effect on the bankruptcy estate, let alone "any effect."  For this reason, the Court finds there is subject matter jurisdiction.

The next issue, then, is to determine if *this* Court has jurisdiction.  As discussed above, one of the ways Congress dealt with *Marathon* was by creating a distinction between core and non-core proceedings.  Again, the Fifth Circuit and Supreme Court have addressed the bankruptcy court system post *Marathon*, and to the best of this Court's knowledge, the current bankruptcy system remains intact.  *See, e.g., Celotex*, 514 U.S. 300.  The *Wood* court, after adopting the *Pacor* test and determining that subject-matter jurisdiction existed in the case, addressed the placement of that jurisdiction.  *In re Wood*, 825 F.2d at 94.  28 U.S.C. § 157, unlike subsection 1471(c) of the 1978 Act, does not give the bankruptcy court full judicial power

over all matters which the district courts have jurisdiction pursuant to § 1334.  Section 157 creates a distinction between cases in which a bankruptcy judge may enter final orders and those in which a bankruptcy judge is limited to submitting proposed findings of fact and conclusions of law to the district court, subject to de novo review.[2]  The distinction has become known as the core/non-core distinction.  The "core" and "related to" language was in direct response to *Marathon*.  *See, e.g., In re Wood*, 825 F.2d at 96; *see also* Alissa Pittman et al., *Survey: The Controversy Surrounding the Jurisdiction of Bankruptcy Courts*, 5 J. BANKR. L. & PRAC. at 390-91 (discussing the legislative response to *Marathon*).

Section 157 does not specifically define core proceedings, but provides a nonexclusive list of examples.  Plaintiff argues that this adversary is a core proceeding under two of the examples listed in §157(b)(2):

> (A) matters concerning the administration of the estate;…and

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship…

Plaintiff's complaint raises several causes of action: substantive consolidation, alter-ego, preliminary injunction (already granted), and declaratory judgment.  The *Wood* court determined

---

[2] Subsection 157(b)(1) states that

> Bankruptcy judges may hear and determine all cases *under* title 11 and all *core proceedings* arising under title 11, or *arising in* a case under title 11, referred under subsection (a) of this section, and *may enter appropriate orders and judgments, subject to review under section 158 of this title*.

(emphasis added).

Subsection 157(c) states that

> (1) A bankruptcy judge may hear a proceeding that is *not a core* proceeding but that is otherwise *related to* a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(emphasis added).

that "if the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding." *In re Wood*, 825 F.2d at 97. This Court recently addressed the issue of substantive consolidation, and held that the power to order substantive consolidation comes from Section 105(a), which states "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Introgen Therapeutics, Inc.*, 429 B.R. 570, 582 (Bankr. W.D. Tex. 2010) (citing *In re Permian Producers*, 263 B.R. 510, 515 (W.D. Tex. 2000)). As a cause of action involving rights created by the federal bankruptcy code, a substantive consolidation cause of action is core.

The alter-ego claim of the Plaintiff asserts that Esperada and JHBA were organized and operated as a mere tool or business conduit for the Debtor, and that the assets of Esperada and JHBA should be available to pay creditors of the Debtor. If the Plaintiff is successful here, this will have a direct effect on the liquidation of the assets of the estate, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(O). Defendants argue that the Court lacks subject matter jurisdiction over this cause of action because the alter-ego claim is a state law claim. This, however, is not dispositive, as 28 U.S.C. § 157(b)(3) states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."

The issues on which Plaintiff seeks declaratory judgment all involve rights created by federal bankruptcy law, and are also therefore core proceedings.

Defendants next argue that they have a right to an Article III tribunal by virtue of the fact that they also have a Seventh Amendment right to a jury trial. Defendants correctly state that "[t]he test for whether an Article III court is necessary for an action at law is the same as the test for whether a party has a Seventh Amendment right to a jury trial." *In re Clay*, 35 F.3d 190, 194

(5th Cir. 1994) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). The Supreme Court outlined the three considerations that must be made in the bankruptcy context when determining whether there is a right to a trial by jury:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Granfinanciera*, 492 U.S. at 42 (footnote omitted) (citations omitted) (internal quotation marks omitted). In making the determination, the court must first consider whether the claims at issue are legal or equitable in nature and then must consider whether the claims involve public or private rights. *See id.*

This Court must first determine if Plaintiff's claims are legal or equitable in nature, because if the claims are legal, the party has a Seventh Amendment right to a jury trial. *Granfinanciera*, 492 U.S. at 41. To determine if a claim is legal or equitable in nature, this Court must first "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)). The Court must then "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* In stating that they are entitled to an Article III court, Defendants argue that the present action is an action seeking a money recovery from some or all of the Defendants. *See, e.g.,* (docket no. 68). Their argument ends there. The Supreme Court holds that "[i]n cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in

13

an action sounding in tort or for money had and received." *Granfinanciera*, 492 U.S. at 47-48 (internal citations omitted). Plaintiffs, however, are not seeking the payment of money by way of damages. They are seeking an order of this Court finding that JHBA and Esperada are the alter-egos of Debtor and substantive consolidation. Plaintiff's causes of action are entirely equitable in nature. *See In re Permian Producers Drilling, Inc.*, 263 B.R. at 517 (discussing the power of a bankruptcy court to order substantive consolidation as an equity power); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (identifying alter-ego as an equitable remedy). This Court finds Defendants' argument, that "the present action is an action that would have been tried at common law since it is an action seeking a money recovery from some or all of the Defendants," is unsubstantiated and unpersuasive.

The dissent in *Granfinanciera* succinctly sums up the test to be used to determine if there is a right to a jury trial:

> First, we must determine whether the matter to be adjudicated is "legal" rather than "equitable" in nature, a determination which turns on the nature of the claim and of the relief sought. If the claim and the relief are deemed equitable, we need go no further: the Seventh Amendment's jury-trial right applies only to actions at law.

*Granfinanciera*, 492 U.S. at 91 (Blackmun, J., dissenting). As this test, and the lengthier and legally identical test discussed above state, if the claim and relief are found to be equitable in nature as opposed to legal, the court need go no further in its analysis. This Court therefore finds that Defendants have no right to a Seventh Amendment jury trial, and by extension, no right to an Article III tribunal.

B.     Plaintiff's Alter-Ego Allegations and Defendants' Motions to Dismiss

Plaintiff seeks to reverse veil pierce and a determination that Esperada and JHBA are the alter-egos of the Debtor. Defendants argue that this claim fails against JHBA under Texas law because in order to reverse veil pierce, a claimant must demonstrate that the corporation is the

alter-ego of a shareholder; Mr. Bass was never a shareholder and therefore Plaintiff's claims against JHBA are precluded by law.  Defendants also argue that this claim fails against Esperada for the same reason, but additionally argue that the corporate laws of the Cayman Islands must be used to determine reverse alter-ego.

Courts are required to apply the law of the state of incorporation to corporate veil issues; so for JHBA, this Court will analyze Texas law pertaining to piercing the corporate veil and reverse corporate veil piercing.  *The Cadle Co. v. Brunswick Homes, LLC (In re Moore)*, 379 B.R. 284, 289 FN 3 (Bankr. N.D. Tex. 2007) (citing *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980)).  Piercing the corporate veil is defined as "[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts."  BLACK'S LAW DICTIONARY 1264 (9th ed. 2009).  Reverse veil-piercing/alter-ego is the opposite; it calls for holding a corporation's assets accountable for the liability of individuals who treated the corporation as their alter-ego. *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243 (5th Cir. 1990).  Under this theory, the court treats the individual and corporation as one and the same, and the property of the corporation may be attached to satisfy the debts of the individual.  *Id.* at 243-44 (internal citations omitted).

Defendants argue that Texas courts do not recognize the reverse alter-ego theory where the individual owned no stock in the corporation.  *See* docket no. 71, *citing Zahra Spiritual Trust*, 910 F.2d at 245-46; *Lane v. Dickinson State Bank*, 605 S.W.2d 650, 653 (Tex.Civ.App. Houston [1st Dist.] 1980, *no writ*); *Patterson v. Wizowaty*, 505 S.W.2d 425, 428 (Tex.Civ.App. Houston [14th Dist.] 1974, *no writ*); *George v. Houston Boxing Club, Inc.*, 423 S.W.2d 128, 132 (Tex.Civ.App. Houston [14th Dist.] 1967, *writ ref'd n.r.e.*).  Defendants cite *Lane v.*

*Dickinson State Bank* for the proposition that Texas courts do not recognize the reverse alter-ego theory where the individual owned no stock in the corporation.  910 F.2d 640.  Defendants state that this case refused to find that a bank was the alter-ego of defendant corporation because defendant corporation owned no stock in the bank.  In reading the case, the Court is unsure where Defendants believe they found this holding.  The Court believes it may be from this line: "However, we have found no authority for applying the alter-ego doctrine to a situation such as this one, where the individuals are not alleged to be shareholders…" *Id.* at 653.  That sentence, in its entirety, states: "However, we have found no authority for applying the alter-ego doctrine to a situation such as this one, where the individuals are not alleged to be shareholders, *incorporators, directors, or officers of the target corporation.*" *Id.* (emphasis added).  Defendants then cite *Patterson v. Wizowaty* for the quote that there is "no Texas authority for the proposition that an individual can be held personally liable under the alter-ego doctrine when he owns none of the outstanding stock of the corporation." 505 S.W.2d 425, 238.  This case is over 37 years old, having been decided in January of 1974, and, as discussed below, there now exists authority for this proposition.

Plaintiffs argue that stock ownership in a corporation is not a requirement.  Plaintiffs cite a 2007 case from the Bankruptcy Court for the Northern District of Texas in arguing that a court may find a company is the alter-ego of an individual even where the individual owned no stock in the corporation. *Cadle Co.*, 379 B.R. at 289, 296.  That court stated that

> *Zahra* instructs that while equity ownership is a traditional requirement to apply reverse corporate veil piercing, the remedy may be appropriate even where the individual whose liability is involved…was not a record or nominal equity owner of the entity to be pierced—for example if the individual had/has a *de facto* ownership in the corporation.

*Id.* at 289.  The court later stated that

16

…this court also is bound by *Zahra* to conclude that while there must be an ownership interest between an individual and the corporation whose separateness is sought to be disregarded, it is possible that such ownership might exist indirectly or implicitly—such as where the actual record holder of the shares of the corporation holds them as a sham for the individual.

*Id.* at 296. It appears from this case that it is possible to find alter-ego liability even when the individual did not directly own any shares in a corporation if it can be shown that the individual was at least a de facto owner. Defendants' attempt to distinguish this case is unconvincing and this Court finds that Plaintiff pled this theory sufficiently to survive the motion to dismiss as it applies to JHBA.

Defendants also argue that Texas law should not be applied to Esperada, as Esperada is a Caymanian corporation. However, Defendants make no attempt to argue that the Cayman Islands do not recognize alter-ego liability. The Cayman Islands generally follow English law, therefore, it seems logical to determine if English law recognizes alter-ego liability. *See Int'l Equity Invs. Inc. v. Opportunity Equity Partners, Ltd.*, 475 F.Supp.2d 456 (S.D.N.Y. 2007). The United Kingdom has recognized piercing the corporate veil generally for well over 100 years. *See Salomon v. Salomon & Co.*, [1897] A.C. 22. U.K. courts have held that when a person uses a company "in an attempt to evade (i) limitations imposed on his conduct by law; (ii) such rights of relief against him as third parties already possess…." the veil may be lifted. *Adams v. Cape Industries* [1990] Ch 433; 2 WLR 657; [1991] 1 All ER, 929; [1990] BCC 786 Sealy 66. Courts in the U.K. have lifted the veil after determining a company was established to evade "rights of relief against him as third parties already possess." *Id.* The courts in the U.K. will pierce the veil when a company is set up to allow members of the company to get out of legal obligations owed to third parties. The landmark case in this area is *Gilford Motor Co. v. Horne*. (CA) [1933] Ch 935; Sealy, 62. In that case, Mr. Horne, a former employee subject to a restraint of trade clause upon ending his employment with Gilford Motor Co., had his wife and

son set up a company in their names in his attempts to thwart his agreements with Gilford. Gilford Motor sued and the court sided with Gilford, holding that Horne could not establish a company that could do what Horne, as an individual, was under a legal obligation not to do.  In other words, using a company to evade an individual's legal liability will not be tolerated in the U.K. and the courts will pierce the veil in this situation.  Therefore, this Court finds that Defendants' argument that Texas law should not be applied to Esperada, without more, is insufficient to find that Plaintiff's claim must be dismissed.  Based on the above discussion, this Court finds that Plaintiff's alter-ego claims against JHBA and Esperada survive Defendants' motions to dismiss.

C.    Personal Jurisdiction over Esperada

Defendants argue that the Court must dismiss this case for lack of personal jurisdiction on the basis that (1) no federal or state authority supports service upon Esperada, and (2) Esperada is a Caymanian corporation that transacts no business in the United States and holds assets solely in the Cayman Islands (docket no. 73).

Plaintiff in turn argues that F.R.C.P. 4(k) authorizes service on Esperada and quotes a Fifth Circuit case, stating "[a] federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." ***Freudensprung v. Offshore Technical Servs., Inc.***, 379 F.3d 327, 343 (5th Cir. 2004).  The Texas long-arm statute permits the exercise of jurisdiction to the fullest extent allowed by the United States Constitution, and therefore, if the nonresident defendant has sufficient minimum contacts with Texas and exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice," a court may exercise personal

18

jurisdiction over the nonresident defendant. *Id.* Plaintiff then argues that both prongs of this test are met.

Plaintiff next argues that the Court has personal jurisdiction over Esperada because it has exclusive jurisdiction over property of James Bass' bankruptcy estate pursuant to 28 U.S.C. § 1334(e).[3] Pursuant to 11 U.S.C. § 541(a), the estate is comprised, *inter alia*, of (1) all legal or equitable interests of the debtor in property as of commencement of the case; and (2) proceeds, product, offspring, rents, or profits of or from property of the estate.

Plaintiff's third argument is that the Court has personal jurisdiction over Esperada because Esperada is the alter-ego of James Bass. "[A] court which has jurisdiction over a corporation has jurisdiction over its alter egos." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010) (internal citations omitted). Plaintiffs cite another Fifth Circuit case in their argument:

> Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis.

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (discussing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)) (emphasis in original).

---

[3] The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—
    (1) of all the property, wherever located, of the debtors as of the commencement of such case, and of property of the estate; and
    (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

Defendants' main response to the arguments of the Plaintiff is to again state that Texas does not recognize alter-ego liability for non-shareholders.  As discussed above, this Court holds that owning the stock of a corporation is not necessarily required for an alter-ego claim.

Without ruling on the merits of Plaintiff's alter-ego claim, this Court agrees with Plaintiff's assertion that if this Court determines that Esperada is the alter-ego of the Debtor, this Court will have personal jurisdiction over Esperada.  Based on the allegations of Plaintiff and the case law cited, this Court finds that the Court does have personal jurisdiction over Esperada, currently for the limited purpose of allowing discovery to go forward to determine if Esperada is in fact the alter-ego of Debtor.

D.    Substantive Consolidation

Defendants argue that substantive consolidation is not an equitable remedy available in bankruptcy.  This Court has previously dealt with this issue and finds that equitable remedy is alive and well in the Fifth Circuit.  *See **In re Introgen Therapeutics, Inc.***, 429 B.R 570 (Bankr. W.D.Tex. 2010).

 Defendants next argue that substantive consolidation is impossible between a debtor and a non-debtor, citing **Peoples State Bank v. GE Capital Corp. (*In re Ark-La-Tex Timber Co.*)**, 482 F.3d 319, 327 n.7 (5th Cir. 2007).   Again, Defendants have selectively quoted a case. Defendants' Motion to Dismiss asserts that this case stated "a substantive consolidation would have been impossible to effect [between the debtor and two entities related to debtor], because [the related entities] were not in bankruptcy" (docket no. 67).  The full quote is: "*Under these facts*, a substantive consolidation would have been impossible to effect, because [the related entities] were not in bankruptcy."  **Peoples State Bank**, 482 F.3d at 327 n.7 (emphasis added). The debtor in that case purchased the membership interests in the two related entities and the

parties erroneously believed this order affected a substantive consolidation. *Id.* Those related entities were separate and distinct from the debtor; their only relation was that they had common owners. *Id.* at 326 n.3. These facts are clearly different from the facts of the case at issue here. Here, we have a debtor attempting to substantively consolidate the debtor's estate with the estate of two entities which the Plaintiff alleges are alter-egos of the Debtor. If it is ultimately determined that JHBA and Esperada are alter-egos of the Debtor, the issue of substantive consolidation will become moot as the assets of JHBA and Esperada will be the assets of the Debtor, without the need for substantive consolidation. The Court will therefore reserve judgment on whether there can be substantive consolidation of a debtor with a non-debtor until after discovery and a trial. However, a debtor and non-debtor may be substantively consolidated if the facts warrant,[4] and Plaintiff successfully pled this in his complaint.

<h3 align="center">CONCLUSION</h3>

Having gone through the facts of the case and considered the evidence submitted by the parties, this Court finds that (1) this Court and the current bankruptcy system are constitutional; (2) Plaintiff sufficiently pled a complaint for alter-ego liability that survives the motions to dismiss; (3) this Court can exercise personal jurisdiction over Esperada for the purposes of discovery; and (4) substantive consolidation in general is permitted in the Fifth Circuit, but the issue of whether it is appropriate in this case will be reserved for later determination after discovery and a trial on the merits. For these reasons, Defendant's Motions to Dismiss (docket nos. 66-74) are DENIED.

---

[4] *See, e.g., In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515-17 (discussing substantive consolidation between a debtor and alter ego corporations); *In re E'Lite Eyewear Holding, Inc.*, 2009 WL 349832 at *3 (Bankr. E.D.Tex. Feb. 5, 2009) (discussing how the courts are divided on whether to allow consolidation of a debtor with a nondebtor, but determining that it is allowed, just with more caution than with a substantive consolidation between two debtors).